UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
| Title | *Adrian Falkner v. General Motors LLC* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [30]

## I.  Introduction

On January 22, 2018, Plaintiff Adrian Falkner filed this civil action, seeking relief for (1) copyright infringement and (2) falsification, removal, and alteration of copyright management information in violation of the Digital Millennium Copyright Act ("DMCA"). Defendant's Statement of Uncontroverted Facts, Dkt. 30-1 ("DSUF"), ¶ 25; First Amended Complaint ("FAC"), Dkt. 22, at 7–8. Based on his allegations that Defendant General Motors LLC's conduct was "intentional, deliberate, willful, wanton, committed with the intention of injuring Plaintiff, and depriving Plaintiff of Plaintiff's legal rights," Plaintiff seeks an award of punitive damages. FAC at 7, 11.

On June 25, 2018, Defendant filed the instant Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Mot."). Dkt. 30. Defendant moves for summary judgment on the two claims asserted against it or, alternatively, for partial summary judgment on either claim and for partial summary judgment on Plaintiff's claim for punitive damages. *Id.* at 1–2.

## II.  Factual Background

The relevant facts of this case are generally undisputed. Plaintiff is an artist, producing works under the pseudonym "Smash 137." DSUF ¶ 1. In 2014, Plaintiff was invited by a Detroit art gallery to create an outdoor mural as part of a marketing project of murals to be displayed throughout a parking

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
| Title | *Adrian Falkner v. General Motors LLC* | | |

garage located at 1234 Library Street in Detroit, Michigan. DSUF ¶ 2. Plaintiff created such a mural on two perpendicular walls located in that parking garage. DSUF ¶¶ 3, 5. In so doing, Plaintiff placed his pseudonym, "SMASH 137," on the left side of one of the walls that displayed his mural. DSUF ¶ 4. Plaintiff was allowed to choose where in the garage to paint his mural, and was afforded complete creative freedom with respect to the mural. Plaintiff's Submitted Undisputed Facts ("PSUF"), Dkt. 32-1, ¶¶ 14–15. Plaintiff was given no aesthetic to match and was not told of any function that the mural should play. PSUF ¶ 15. Ultimately, Plaintiff chose to create the mural using themes and motifs that were similar to those used on the paintings that had been exhibited at a solo show long before he had heard of the mural project. PSUF ¶ 18. In addition, the architecture of the parking garage and accompanying building were already complete before Plaintiff started painting. PSUF ¶ 16.

In August 2016, Alex Bernstein, a professional automotive photographer, traveled to Detroit. DSUF ¶¶ 6, 8. Knowing that automotive companies generally maintain press fleets of vehicles for publicity purposes, Bernstein borrowed a car from Cadillac.[1] DSUF ¶¶ 9–10. During his trip, Bernstein took several photographs. DSUF ¶ 13. One of them captured a portion of Plaintiff's mural. DSUF ¶ 14. The photograph showed only one of the two walls constituting the mural, and the wall that was not included was the wall on which Plaintiff had placed his pseudonym. DSUF ¶ 22. Bernstein claims that he did not see Plaintiff's name or pseudonym on the mural. DSUF ¶¶ 18, 20; Declaration of Alex Bernstein, Dkt. 30-2 ("Bernstein Decl."), ¶ 8. Bernstein declares that he chose to frame his photograph in this particular manner because he liked the composition; it permitted him to include a portion of the Detroit skyline. DSUF ¶¶ 19, 21; Bernstein Decl. ¶ 8. The mural wall that was included in the photograph does itself include a plaque that contains some copyright management information about Plaintiff, although it cannot be read in the photograph because of the distance from which the photograph was taken. DSUF ¶ 26.

Bernstein sent the photographs he had taken in Detroit, including the photograph depicting Plaintiff's mural, to Defendant. DSUF ¶ 22. Defendant's advertising agency posted Bernstein's photograph of the mural on Defendant's social media. DSUF ¶ 23. Donny Nordlicht, the General Motors employee who received the photographs, claims that neither he nor any other General Motors employee

---

[1] The parties dispute the precise circumstances in which Bernstein borrowed the car, but this dispute is not material.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

was aware that the photograph omitted a perpendicular wall displaying the mural or that the omitted wall contained Plaintiff's pseudonym at the time the photograph was posted. DSUF ¶ 22; Declaration of Donny Nordlicht, Dkt. 30-6 ("Nordlicht Decl."), ¶¶ 1, 7.

### III.   Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, but when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV.   Analysis

#### A.   The Copyright Infringement Claim

##### 1.   *PGS Works, Architectural Works, and the Section 120(a) Exception to the Protection of Architectural Works*

The federal Copyright Act enumerates eight categories of original works of authorship that are

|   | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

afforded copyright protection. 17 U.S.C. § 102(a). Of particular note are Section 102(a)(5), which protects pictorial, graphic, and sculptural ("PGS") works, and Section 102(a)(8), which protects architectural works.

The definition of an "architectural work" warrants further consideration. Under 17 U.S.C. § 101, an "architectural work" is the "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." Administrative regulations further specify that the "term building means humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions." 37 C.F.R. § 202.11(b)(2). The legislative history of the relevant statute provides that the term "buildings" also "covers structures that are used, but not inhabited, by human beings." H.R. Rep. 101-735, 101st Cong., 2d Sess., at 6951 (1990). The definition of "buildings" excludes structures other than buildings, such as "bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats," 37 C.F.R. § 202.11(d)(1), and also excludes "[s]tandard configurations of spaces, and individual standard features," which include "windows, doors, and other staple building components." 37 C.F.R. § 202.11(d)(2).

Despite the general protection of architectural works under 17 U.S.C. § 101, such protection is limited in specific contexts by 17 U.S.C. § 120(a). Under Section 120(a), "[t]he copyright in an architectural work that has been constructed does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place." Thus, one may freely take a photograph of an architectural work, including a "building," without infringing a copyright in the work.

This case presents a more complex issue: whether Section 120(a) applies to (and thus limits the copyright protection of) a PGS work that is physically connected to an architectural work. This issue has been addressed in one case to date: *Leicester v. Warner Brothers*, 232 F.3d 1212 (9th Cir. 2000).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

      2.      *Background on* Leicester

           i.      *District Court Opinion*

     In *Leicester v. Warner Bros.*, No. CV-95-4058-HLH(CTX), 1998 WL 34016724 (C.D. Cal. May 29, 1998), Leicester, an artist, claimed copyright infringement after visual depictions of streetwall towers that Leicester had designed were included in the film *Batman Forever*. *Leicester*, 232 F.3d at 1213. In fact, Leicester had designed an entire courtyard space, called the Zanja Madre, which was built adjacent to and concurrent with the 801 Tower in downtown Los Angeles. *Id.* at 1212–13. Leicester registered the Zanja Madre for copyright as a sculptural work. *Id.* at 1215.

     The 801 Tower and the four towers that form its streetwall on the south side of the building appear briefly in *Batman Forever*. *Id.* at 1213, 1215. Although Warner Bros. obtained written permission from the development agency to use the premises of the 801 Tower in the film, Leicester was not consulted. *Id.* at 1215. Leicester sued for copyright infringement, arguing that, as a sculptural work, the Zanja Madre received copyright protection under Section 102(a)(5). *Id.* at 1213–14.

     At trial, Warner Bros. argued that the four streetwall towers shown in the film, in conjunction with the 801 Tower, constituted a unitary architectural work within the meaning of Section 102(a)(8) and thus could freely be pictorially reproduced under Section 120(a). *Leicester*, 1998 WL 34016724, at *6. The trial court concluded that the four towers depicted were "a part of the architectural work and that therefore, Section 120(a) applie[d], allowing the pictorial representations made by" Warner Bros. *Id.* at *7. The court reached this conclusion based on a fact-specific analysis of the relationship between the Zanja Madre and the 801 Tower. For example, the towers consisted of the same material as the pilasters of the building (identical bases, with pink granite and green marble) and were "clearly designed to give the impression that the building" continued to the edge of the property line. *Id.* In addition, the lanterns on the lantern towers were "designed to match up to the lanterns" on the building. *Id.* Furthermore, the four towers served the functional purpose of "directing" and "controlling" traffic into the courtyard of the building through gates connected to the towers. *Id.* Lastly, Leicester carried out his work as part of the original development of the property; that is, the Zanja Madre and the 801 Tower were developed and constructed in tandem. *Id.* at *1, *7. In sum, the court found that "the four towers ha[d] functional aspects designed to be a part of the building plan" and thus concluded that "the towers [were] a part of

                                                                                                                                       :

Initials of Preparer

                                                                                                                                         PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

the architectural design of the building." *Id.* at *7.

The only remaining issue standing in the way of the court's applying Section 120(a) to the streetwall and towers was the possible application of the doctrine of "conceptual separability."[2] Prior to the inclusion in 1990 of "architectural works" as a category of protected works under amendments to the Copyright Act, buildings had no copyright protection.[3] *Id.* at *8. However, portions of buildings that consisted of original artistic work and were "not a part of a functional, utilitarian, or useful role in the architecture" were considered "conceptually separable" from the building and were independently and fully protected under Section 102(a)(5). *Id.*

The issue the court in *Leicester* thus had to grapple with was whether the doctrine of conceptual separability survived the 1990 amendments to the Copyright Act, which protected architectural works in Section 102(a)(8) but simultaneously limited their protection in Section 120(a) in certain contexts, such as photographs and other pictorial representations. Based on a review of the relevant legislative history, the court concluded that "the intent of Congress was to substitute the new protection afforded architectural works for the previous protection sometimes provided under the conceptual separability test for non-utilitarian sculptures . . . incorporated into a work of architecture." *Id.* The result of this interpretation was that "the former doctrine of 'conceptual separability' as it applied to a pictorial, graphic or sculptural work embedded as part of a building, [was] modified by the 1990 amendments" and thus does not provide independent protection for embedded PGS works. *Id.* at *9.

Having found that the four streetwall towers of the Zanja Madre were part of the architecture of the 801 Tower, and having concluded that conceptual separability did not survive in this context, the court held that Section 120(a) applied to the towers in addition to the building itself. *Id.* Thus, the film's visual representations of the towers did not constitute copyright infringement. *Id.*

---

[2] Another theoretical barrier to the court's applying Section 120(a) was the doctrine of "*physical* separability." *See, e.g.*, 1 Nimmer on Copyright § 2A.08[B][3]. However, this concept was not argued in *Leicester*—nor is it argued in the instant case.

[3] However, architectural *plans* were afforded protection as "drawings or plastic works of a scientific or technical character." *See, e.g., Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898 (5th Cir. 1972).

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

       ii.       *Ninth Circuit Opinion*

On appeal, the Ninth Circuit affirmed the district court's judgment. *Leicester*, 232 F.3d at 1214. The majority opinion, written by Judge Rymer, in large part deferred to the findings of the district court. *Id.* at 1217–19 (concluding that the district court's "findings [were] well supported in the record"). Judge Rymer's opinion considered the district court's findings to be "powerful evidence that [the streetwall towers were] part of the functional and architectural vocabulary of the building." *Id.* at 1219. "Because the streetwall towers [were] part of the architectural work," the court held that Section 120(a) applied to the towers and "the public [had] the right to photograph . . . [the] towers." *Id.*

Judge Rymer's opinion discussed the applicability of the conceptual separability doctrine only in passing. First, in responding to Leicester's argument that the streetwall towers were a conceptually separable sculptural work and thus entitled to independent copyright protection notwithstanding Section 120(a), Judge Rymer stated that "the district court found otherwise and we cannot say its finding lacks support." *Id.* at 1219. Second, Judge Rymer noted that the policy underlying the enactment of Section 120(a) was to permit "publicly visible buildings [to be] . . . photographed" free from "'ad hoc determinations' of fair use" by the public. *Id.* at 1219–20. Based on this policy, according to Judge Rymer, "it would be counterintuitive to suppose that Congress meant to restrict pictorial copying to some, but not all of, a unitary architectural work." *Id.* at 1220.

Judge Tashima "concur[red] in the result and in most of the reasoning of the majority opinion." *Id.* at 1220 (Tashima, J., concurring). He wrote separately to disagree with Judge Rymer's "conclusion that the district court found that the streetwall towers were *not* 'conceptually separate' from the building." *Id.* at 1220–21. Judge Tashima clarified that the "district court found it unnecessary to decide whether the streetwall towers were conceptually separate because it concluded as a matter of law that the enactment of Section 120(a) had the effect of limiting the conceptual separability concept to situations not involving architectural works." *Id.* at 1221 (quotation marks omitted). Judge Tashima "agree[d] with this conclusion as applied to the facts of this case," *id.*, based on a review of the legislative history of Section 120(a), *id.* at 1222–24. Judge Tashima concluded: "In these factual circumstances, where a joint architectural/artistic work function[ed] as part of a building," Section 120(a) permitted Warner Bros. to include pictorial representations of the streetwall towers in its film. *Id.* at 1221. He then reiterated that his conclusion applied "in the narrow circumstances of this case." *Id.*

                                                                                               :

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

    Judge Fisher, writing in dissent, "agree[d] with the majority that the district court did not clearly err in finding as a factual matter—after a thorough and thoughtful inquiry—that the streetwall portion of the Zanja Madre is part of the larger architectural work of the 801 Building." *Id.* at 1225 (Fisher, J., dissenting). However, he "d[id] not believe that end[ed] the inquiry" because he "d[id] not believe [that] finding preclude[d] a concurrent finding that the streetwall towers [could] also be considered conceptually separate from the building." *Id.* Indeed, if the towers were conceptually separate from the 801 Tower, then they would be "entitled to full copyright protection as a sculptural work under 17 U.S.C. § 102(5), despite being part of an architectural work"—"unless [the court] determine[d] as a matter of law that . . . [Section 120(a)] completely eliminated separate copyright protection for [PGS works] that are a part of, but conceptually separate from, architectural works." *Id.* Judge Fisher then conducted his own thorough review of the legislative history of Section 120(a), *id.* at 1226–35, concluding that a "reasonable reading of the legislative history supports the view that . . . separate protection [of PGS works] remains available" even after the enactment of Section 120(a). *Id.* at 1235. Thus, "a PGS work that is part of, but conceptually separate from, an architectural work can enjoy full PGS copyright protection." *Id.* Judge Fisher dissented because he would have reversed the district court's conceptual separability holding and remanded for a conceptual separability determination. *Id.*

    3.    This Court's Interpretation of Leicester

        i.    *The "Part of" an Architectural Work Requirement*

    All three judges on the Ninth Circuit panel unambiguously agreed that, for Section 120(a) to apply to a PGS work that is not itself an architectural work, the PGS work must be "part of" an architectural work. *Id.* at 1219 ("Because the streetwall towers are *part of* the architectural work, § 120(a) applies.") (emphasis added); *id.* at 1222 ("agree[ing] with [the district court's] conclusion" that, "[i]n these factual circumstances, where a joint architectural/artistic work function[ed] as *part of* a building . . . § 120(a)'s exemption applied") (Tashima, J., concurring) (emphasis added); *id.* at 1225 ("I agree with the majority that the district court did not clearly err in finding as a factual matter . . . that the streetwall portion of the Zanja Madre is *part of* the larger architectural work of the 801 Building" (Fisher, J., dissenting) (emphasis added). In other words, in order for a PGS work to be treated as an architectural work (and thus be subject to the Section 120(a) exception that limits the protection of

                                                                                                     :

                                                                                      Initials of Preparer

                                                                                                                     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

architectural works), the PGS work must either be an independent architectural work or be "part of" an architectural work.

Although the court did not define a single, determinative test for what renders a PGS work "part of" an architectural work, it did describe factors. For example, it considered whether the PGS work had an "integrated concept" that "includ[ed] both architectural and artistic portions." *Id.* at 1217. It noted, relatedly, that certain PGS works may independently be "traditionally considered as architectural features" or "one of the basics of the architectural vocabulary," such as columns, windows, and doors. *Id.* at 1218. The court also noted that PGS works may be part of an architectural work when they are "designed to appear as part of the building." *Id.* Lastly, the court analyzed whether a PGS work "serves [a] functional purpose" that is related to the building. *Id.*

The court then described the facts that were relevant to the trial court's finding that the streetwall towers were part of the 801 Tower. First, the decorative elements that constituted the design of the streetwall towers complemented the 801 Tower's pilasters and lanterns. *Id.* at 1218. The bases of the streetwall towers were "identical to those of the building pilasters for the first three floors, constructed with the same pink granite and green marble," and the "lanterns on the lantern towers match[ed] the lanterns attached to the building at its third floor level" in terms of material and height. *Id.* Relatedly, the streetwall towers were "positioned [in terms of spacing] to match the distance between any two pilasters of the building." *Id.*

Second, the streetwall was an architectural element mandated by the development agency, "which required a structure with sufficient mass to establish the street edge and be no higher than three stories." *Id.* The trial court heard testimony that streetwalls are "traditionally considered as architectural features." *Id.* In this case, the streetwall "matche[d] the building and g[ave] the impression that the building continue[d] to the end of the property line," and the "streetwall towers [were] designed to appear as part of the building." *Id.* Indeed, the streetwall was specifically designed to "extend[] from the base of the Tower to the property line in order to recreate the feeling of traditional downtown streets in which buildings touch each other." *Id.* at 1214.

Lastly, the streetwall "serve[d] the functional purpose of channeling traffic into the courtyard, as metal gates, which open and close for control, latch onto the lantern towers." *Id.* In other words, a gate

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

was embedded in the streetwall, and the gate served a function connected to the 801 Tower: to control and channel foot traffic into the Tower's courtyard.

### ii.     The Conceptual Separability Doctrine

Somewhat less clear after *Leicester* is how, if at all, courts should apply the doctrine of conceptual separability to PGS works that are part of architectural works. The three opinions filed in *Leicester* each expressed a unique perspective regarding this issue.

Judge Fisher, in dissent, stated clearly that PGS works that are part of an architectural work may nonetheless be protected under conceptual separability, even after the 1990 amendments. *Id.* at 1235 ("Consequently, a PGS work that is part of, but conceptually separate from, an architectural work can enjoy full PGS copyright protection.") (Fisher, J., dissenting).

Judge Tashima, in a concurring opinion, concluded that the 1990 amendments preclude application of conceptual separability in this context, at least in a factual scenario similar to that in *Leicester*. *Id.* at 1222 ("I thus read the [1990 amendments] as rejecting application of the conceptual separability test where the architectural work and the artistic work are so closely and functionally intertwined as in this case.").

The majority opinion, authored by Judge Rymer, seemed to assume the continued application of conceptual separability. In addressing Leicester's argument that the streetwall towers were conceptually separable from the 801 Tower, Judge Rymer noted that "the district court found otherwise and we cannot say its finding lacks support." *Id.* at 1219. This Court believes that the most salient interpretation of the phrase "the district court found otherwise" is that the district court found that the streetwall towers were conceptually separable.[4] If this were true, then in affirming the district court's finding, Judge

---

[4]     However, as noted by both Judge Tashima and Judge Fisher, the district court came to a *legal* conclusion about conceptual separability rather than making a *factual* finding. *Id.* at 1221 ("I disagree . . . with [the majority opinion's] conclusion that the district court found that the streetwall towers were *not* 'conceptually separate' from the building. On this point, I agree with the dissent that the district court found only 'that the four relevant towers are a portion of the architectural work which includes the building and those four towers.' As the dissent further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

Rymer's opinion would in effect have made a sub silentio finding that the conceptual separability doctrine survived the 1990 amendments, even if it did not apply in this case.

On the other hand, the majority opinion approvingly discussed the policy argument for concluding that Section 120(a) was intended by Congress to be a blanket rule that effectively overrides conceptual separability in the context of architectural works. *Id.* at 1219–20 ("When copyright owners in architectural works were given protection for the first time in 1990, the right was limited by § 120(a) so that publicly visible buildings could freely be photographed. This reflected a shift from the prior regime of relying on 'ad hoc determinations' of fair use. Having done this, it would be counterintuitive to suppose that Congress meant to restrict pictorial copying to some, but not all of, a unitary architectural work.").

In sum, an important question appears to remain open, at least partially, after *Leicester*: whether conceptual separability applies in the context of architectural works.[5]

    4.    *Application of the Section 120(a) Exception*

        i.    *Existence of an "Architectural Work"*

In order for the Section 102(a)(8) protection of architectural works to be implicated, there must be an architectural work. Defendant does not argue that the mural itself is an architectural work; thus,

---

observes, the district court found it unnecessary to decide whether the streetwall towers were conceptually separable because it concluded as a matter of law that 'the enactment of Section 120(a) had the effect of limiting the conceptual separability concept to situations not involving architectural works.'") (Tashima, J., concurring) (quoting *id.* at 1225–26 (Fisher, J., dissenting)).

[5]     This question turns on whether the 1990 amendments were intended (1) to preserve the possibility of full protection for PGS works embedded in architectural works (in order to protect the rights of artists), or (2) to provide a blanket exception under Section 120(a) to permit the public to take photographs of architectural works, including any embedded PGS works. The answer to this question likely must be resolved by policy considerations and the legislative history of Section 120(a), which this Court need not address to resolve the dispute squarely before it.

 

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

the only issue is whether the parking garage is an architectural work.

As discussed above, under 17 U.S.C. § 101, "buildings" are considered architectural works. The term "building" "means humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions." 37 C.F.R. § 202.11(b)(2). The legislative history of the relevant statute provides that the term "building" also "covers structures that are used, but not inhabited, by human beings." H.R. Rep. 101-735, 101st Cong., 2d Sess., at 6951 (1990); *Leicester*, 232 F.3d at 1218.

Based on the definition of the term "building," it seems plainly clear that parking garages, including the one at issue here, are "buildings" and thus architectural works for the purpose of Section 102(a)(8). Although people do not live at the parking garage at 1234 Library Street, it is fit for human occupancy and, even more clearly, it is used by human beings. As noted by Defendant in its reply brief, the "owner of the parking structure would not have commissioned artists to paint murals on the inward-facing or interior walls of the structure if the structure were not to be 'occupied' or 'used' by human beings." Defendant's Reply in Support of Motion for Summary Judgment ("Rep."), Dkt. 33, at 2.

Apparently the only court that has analyzed this issue came to the same conclusion. In *Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, No. 05 CV 422(MRK), 2006 WL 2331013, at *6 (D. Conn. Aug. 8, 2006), a court held that a parking garage was an architectural work. First, it noted that, under either [the Black's Law Dictionary or the Second Edition of Webster's Unabridged Dictionary] definitions, as well as in common parlance," a parking garage qualifies as a building because it is a "permanent structure with a roof, and it encloses a space that is designed for a wide variety of human activities, including storage and shelter." *Id.* at 5. It also commented that, pursuant to the legislative history, parking garages are used "by visitors . . . on a daily basis, who store their cars in it . . . and enjoy the shelter it provides from the elements, as well as by maintenance staff who clean it . . . ." *Id.* at 6–7. The Court agrees with the reasoning in *HNTB Corp*. Thus, the parking garage in this case is a "building" and an architectural work under Section 102(a)(8).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|

| Title | *Adrian Falkner v. General Motors LLC* |
|---|---|

        *ii.      Relationship Between the Mural and the Parking Garage*

        The Court must next consider whether the mural is "part of" the parking garage for the purposes of Section 120(a). In order for Section 120(a) to apply, and thus in order for Defendant to prevail on this motion, the mural must be part of the parking garage. For the reasons discussed below, the Court cannot conclude as a matter of law that the mural is part of the parking garage.

        Although the court in *Leicester* did not define a single, determinative test for what renders a PGS work "part of" an architectural work, it did describe factors. It considered whether the PGS work had a concept that integrated it into the underlying architectural work or whether the PGS work could itself be considered an architectural feature. It also commented that PGS works may be part of an architectural work when they are designed to appear as part of the building or when they serve a functional purpose that is related to the building.

        Very few if any of these factors appear to be present in the instant case. Defendant is not arguing that the mural is itself an architectural feature. There is also no indication that the mural was designed to appear as part of the building or to serve a functional purpose that was related to the building. Instead, there is undisputed evidence that Plaintiff was afforded complete creative freedom with respect to the mural, and that the design of the mural was inspired by Plaintiff's prior work. Plaintiff was not instructed that the mural should play a functional role with respect to the parking garage or that the design of the mural should match design elements of the garage. Indeed, the architecture of the parking garage and accompanying building were already complete before Plaintiff started painting.

        These undisputed facts are wholly unlike those in *Leicester* that led that court to determine that the streetwall towers were part of the 801 Tower, such as: the matching decorative design elements, materials, and spacing; the presence of an architectural purpose for the streetwall; and the functional role played by the streetwall in serving as a gate to channel foot traffic into the courtyard. Because the relevant facts in *Leicester* are entirely distinguishable from those here, and because the facts in the record tend to establish—if anything—the *lack* of a relevant connection between the mural and the parking garage, the Court cannot hold as a matter of law that the mural is part of an architectural work under Section 102(a)(8). Thus, it cannot reach the issue of whether Section 120(a) applies to the mural to permit photographs of the mural.

                                                                                                                                              :

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

  *4.*  *Conclusion*

  Because the Court cannot conclude at this stage that Section 120(a) applies to the mural, as the mural is not part of an architectural work as a matter of law, it cannot reach the issue of whether Section 120(a) permits photographs of the mural. Thus, Defendant's motion for partial summary judgment on the copyright infringement claim is DENIED.

  **B.**  **The DMCA Claim**

  *1.*  *Legal Standard*

17 U.S.C. § 1202(b) states:

> "No person shall, without the authority of the copyright owner or the law—
>
> > (1) *intentionally remove or alter* any copyright management information,
> > (2) distribute or import for distribution copyright management information *knowing* that the copyright management information has been *removed or altered* without authority of the copyright owner or the law, or
> > (3) distribute, import for distribution, or publicly perform works, or phonorecords, *knowing* that copyright management information has been *removed or altered* without authority of the copyright owner or the law,
>
> *knowing*, or, without respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b) (emphasis added). There are two features of note. First, each subsection under this provision—Sections 1202(b)(1), (b)(2), and (b)(3)—requires the removal or alteration of copyright

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

management information. Second, each subsection requires that the defendant have some culpable mental state (intent, for Section 1202(b)(1), and knowledge, for Sections 1202(b)(2) and (b)(3)). The Ninth Circuit recently held that "a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past pattern of conduct or modus operandi, that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Stevens v. Corelogic*, 899 F.3d 666, 2018 WL 3751423, at *5 (9th Cir. 2018) (quotation marks omitted).

  2.  *Analysis*

Section 1202(b) always requires removal or alteration of copyright management information in order to apply. *E.g.*, 17 U.S.C. § 1202(b)(3) (prohibiting an actor from distributing copyrighted works "knowing that *copyright management information has been removed or altered*") (emphasis added). Thus, if there was no removal or alteration of copyright management information, the Section 1202(b) claim must fail—regardless of Defendant's mental state.

Plaintiff argues that Defendant "intentionally removed . . . copyright management information in the image used in [Defendant's advertisement], in that Defendant's photograph of the Mural is taken from an angle that renders [Plaintiff's] signature not visible." FAC at 9. But a close reading of Plaintiff's claim reveals that Plaintiff fails to explain how framing a photograph in a manner that excludes copyright management information constitutes "removal" or "alteration" of such information as required by the statute.

Black's Law Dictionary (10th ed. 2014) defines "removal" as the "transfer or moving of a person or thing from one location, position, or residence to another." It defines an "alteration" to an item as a "change" in the item. *Id.* Under these definitions, and under the common usages of the terms, neither Defendant nor Bernstein *removed* or *altered* Plaintiff's signature from the photograph; rather, Bernstein simply chose not to include the perpendicular mural wall in his photograph. The Court cannot find, and Plaintiff has not pointed to, any case standing for the proposition that failure to include copyright management information—merely by the framing of the scene, rather than by any editing or cropping—constitutes removal or alteration. Instead, this statute was likely intended to prevent the "defac[ing] or deform[ing]" of protected works, such as "defacing or altering the title page of a book" or "delet[ing] . . . the electronic information that may accompany a computer file containing a copyrightable

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

composition." 4 Nimmer on Copyright § 12A.10[B][1][a]. In addition, it is undisputed that neither Defendant nor Bernstein removed or altered the copyright management information that Bernstein *did* include in his photograph—the information on the plaque.[6]

As to the issue of Defendant's mental state, the statute by its plain text requires two forms of knowledge (or intent): (1) knowledge of the *existence* of copyright management information, and (2) knowledge that the copyright management information *has been removed or altered*. Plaintiff's arguments regarding Defendant's mental state focused on the former, seemingly ignoring that there can be no knowledge of any removal or alteration if there is no underlying removal or alteration.

On the undisputed record before the court, no reasonable jury could find that any copyright management information was removed or altered. Because a Section 1202(b) claim cannot be won without establishing the removal or alteration of copyright management information, Defendant's motion for partial summary judgment on the Section 1202(b) claim is GRANTED.

### C. The Availability of Punitive Damages

The remaining issue concerns Defendant's motion for partial summary judgment on the issue of the availability of punitive damages. Defendant argues that, as a matter of law, "punitive damages are not available in statutory copyright infringement actions." *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983); *Carranza v. Universal Music Grp, Inc.*, No. CV 09-3604-GW(CWx), 2011 WL 13192628, at *2 (C.D. Cal. Apr. 19, 2011); *Krisel v. Contempo Homes, Inc.*, No. EDCV 06-00507 SGL (SSx), 2006 WL 5668181, at *3 (C.D. Cal. Sept. 27, 2006); *Saregama India Ltd. v. Young*, No. CV 0219856 RJK, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003); *Reinicke v. Creative Empire, LLC*, No. 12cv1405-GPC(KSC), 2013 WL 275900, at *5 (S.D. Cal. Jan. 24, 2013) (noting that "[n]umerous district court cases in the Ninth Circuit ha[ve] followed" *Oboler*).

In response, Plaintiff points only to one district court case holding that precedent did "not

---

[6] As Defendant notes, "Plaintiff cites no authority that Bernstein or [Defendant] had an affirmative duty to assure that the [copyright management information] would be unnaturally enlarged so that the viewer of the photo could read it." Rep. at 8.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-00549-SVW-JPR | Date | September 17, 2018 |
|---|---|---|---|
| Title | *Adrian Falkner v. General Motors LLC* | | |

categorically foreclose the availability of punitive damages under the Copyright Act." *TVT Records v. Island Def Jam Music Grp.*, 262 F. Supp. 2d 185, 187 (S.D.N.Y. 2003). Yet, *TVT Records* appears to be an outlier case given the case law as a whole. *See* 4 Nimmer on Copyright § 14.02[C][2] ("Despite occasional equivocation, the cases are in accord that exemplary or punitive damages should not be awarded in a statutory copyright infringement action. . . . It is suggested, therefore, that [*TVT Records* is a] rogue decision [that should] not be followed, in light of the profusion of contrary cases . . . .").

The Court GRANTS Defendant's motion for partial summary judgment to preclude the availability of punitive damages.

## V. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion for partial summary judgment on the copyright infringement claim and GRANTS Defendant's motion for partial summary judgment on the DMCA claim. The court also GRANTS Defendant's motion for partial summary judgment to preclude the availability of punitive damages.

IT IS SO ORDERED.

:

Initials of Preparer   PMC